FILED
CLERK, U.S. DISTRICT COURT

MAY - 2 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

1
2
3
4
5
6
7
8           **UNITED STATES DISTRICT COURT**

9           **CENTRAL DISTRICT OF CALIFORNIA**

10

11 | GREGORY SHEHEE,                    ) NO. CV 08-2277-FMC (E)
                                       )
12 |              Plaintiff,           )
                                       )
13 |      v.                           ) MEMORANDUM AND ORDER DISMISSING
                                       )
14 | LEROY BACA, L.A. COUNTY SHERIFF,  ) COMPLAINT WITH LEAVE TO AMEND
    | et al.,                          )
15 |                                   )
                                       )
16 |              Defendants.          )
                                       )
17 | _____    )

18

19

20      For the reasons discussed below, the Complaint is dismissed with

21 leave to amend.  See 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

22

23                        **BACKGROUND**

24

25      Plaintiff, allegedly a detainee at the Los Angeles County Jail

26 Twin Towers Correctional Facility, brings this civil rights action

27 pursuant to 42 U.S.C. section 1983 against Los Angeles County Sheriff

28 Leroy Baca, Los Angeles County Supervisor Gloria Molina, and a number

1  of jail officials and other persons.  The Complaint consists of a form
2  Complaint to which is attached a separately paged and titled Complaint
3  containing the charging allegations.[1]  The Complaint also lists two
4  different addresses of record for Plaintiff.  The form Complaint shows
5  Plaintiff's address as the Coalinga State Hospital, while the attached,
6  separately captioned Complaint shows Plaintiff's address as the Twin
7  Towers County Jail.

8

9      Plaintiff alleges that, since February 2, 2001, he has been a
10  civil detainee confined at the Los Angeles County Jail "Twin Towers"
11  facility pending civil proceedings under California's Sexually Violent
12  Predators Act, California Welfare and Institutions Code § 6600 _et seq._
13  ("SVP Act") (Complaint, pp. 2, 5).  In the section of the Complaint
14  entitled "Defendants," Plaintiff identifies the Defendants as: (1)
15  Sheriff Baca; (2) Supervisor Molina; (3) sheriff's captains Marilyn
16  Baker, David Waters, Gary L. Adams and I. Becerra; (3) jail chief
17  physicians John Clark, Sander Peck and Young; (4) Dr. Donald S.
18  Minckler, the Director of Glaucoma Services at the Keck School of
19  Medicine at the University of Southern California ("USC"); (5) jail
20  dietary supervisor Mr. McDonald; and (6) D.A. Cruz of the jail Legal
21  Unit, Inmate Pro-Per Services.  Plaintiff sues all of these Defendants
22  in their individual and official capacities.  However, as set forth
23  below, the body of the Complaint appears to allege claims against
24  numerous other persons.  Plaintiff seeks unspecified injunctive relief,
25  punitive damages in the sum of $124 million, and (apparently) an order

26

27      [1]    Unless otherwise indicated, all subsequent references
28  to the "Complaint" refer to the Complaint attached to the form
   Complaint.

requiring unidentified sheriff's department employees to testify
"confidentially" (Complaint, "Request for Prayer for Relief").

The Complaint purports to allege twelve claims for relief, some of
which contain overlapping allegations:

**Claim One**

In Claim One, Plaintiff alleges that, in September of 1999,
Plaintiff was diagnosed with glaucoma of both eyes (Complaint, p. 6).
Plaintiff alleges that, following Plaintiff's transfer to the jail, Dr.
Williams examined Plaintiff and prescribed medication, including pain
medication (id.).  Unidentified nurses allegedly denied Plaintiff his
pain medication from 2004 through 2006 (id.).  On or about February 1,
2005, "Jane Doe," allegedly a medical student at the Doheny Eye
Institute, Keck School of Medicine, assertedly deliberately
misdiagnosed Plaintiff, allegedly causing Plaintiff to lose vision in
his left eye and to suffer pain and injury to his right eye (id.).
Plaintiff also alleges that an unidentified person or persons denied
Plaintiff "doctor-prescribed" eye drops (id.).[2]

Plaintiff further alleges that unidentified persons caused
unhealthy conditions by using their feet to slide Plaintiff's
medication under his cell door (id.).  Plaintiff alleges that the
Supervisor of Medical Services for the jail, who is unidentified,
///

---

[2]   It is unclear whether these eye drops are the same
medications allegedly prescribed by Dr. Williams.

1 | failed to train his or her subordinates to give Plaintiff adequate
2 | medical treatment and to provide medication in a proper manner (id.).

4 | **Claim Two**

6 |     Plaintiff alleges Dietary Services Supervisor McDonald and Medical
7 | Diets Supervisor Francisco Lerena failed to train their staffs
8 | properly, causing Plaintiff to be denied his allegedly doctor-
9 | prescribed and court-ordered "No Red Meat" diet (Complaint, p. 7).
10 | According to Plaintiff, these supervisors should have known of a
11 | history of cancer in Plaintiff's family and Plaintiff's allegedly high
12 | risk for cancer (id.). Plaintiff alleges that dietary staff member
13 | Blanca Moran and other staff members denied Plaintiff his allegedly
14 | prescribed "No Red Meat" diet, and that staff members "Jane Doe" and
15 | "Ms. Lee" denied Plaintiff a prescribed "No Spice" diet, allegedly
16 | causing Plaintiff to throw up (id.). According to Plaintiff, he was
17 | unable to eat his one hot meal for seven days (id.).

19 |     Plaintiff also alleged that unidentified "medical diet employees
20 | and deputies" used inmates to "food-poison" Plaintiff, assertedly
21 | causing Plaintiff to throw up and defecate "uncontrollably" for three
22 | days, and necessitating treatment with an "I.V." for six hours (id.,
23 | pp. 7-8). Plaintiff contends medical staff knew that inmates who were
24 | not civil detainees were prohibited from coming into contact with a
25 | detainee's food (id., p. 8). Plaintiff also alleges medical staff
26 | denied Plaintiff treatment for this condition (id., p. 8).
27 | ///
28 | ///

4

**Claim Three**

Plaintiff alleges that, due to the failure of Defendants Baca, Molina, Baker and Waters properly to train their subordinates, Plaintiff was placed in administrative segregation from approximately October 12, 2004 until July 2, 2007, without a hearing, during which time he allegedly was denied privileges and access to a law library (id.). Plaintiff further alleges these Defendants allowed their subordinates to put Plaintiff's life in danger by placing him in administrative segregation with "convicted serious murderers such as Clarence Dwayne [sic] Turner," and by allowing Plaintiff to be attacked by penal inmates (id.). Plaintiff further alleges that these Defendants allowed their deputies: (1) to retaliate against Plaintiff for filing inmate complaints; (2) to discriminate against Plaintiff on account of race; and (2) to treat Plaintiff as a penal inmate (id.).

**Claim Four**

Plaintiff alleges that Sergeant McLone, deputies Gudino, Julian, Pitino and Wargo, and other unidentified deputies denied Plaintiff access to the courts and retaliated against Plaintiff for filing grievances "based on their discrimination against [Plaintiff] for being a sexual predator" (Complaint, p. 9). These individuals also allegedly denied Plaintiff his one hour, doctor-prescribed out-of-cell exercise time (id.). Defendants allegedly denied Plaintiff medication for his glaucoma and access to the medical clinic (id.). Deputy Gudino allegedly took four boxes of Plaintiff's legal materials, the loss of

///

1  which assertedly prejudiced Plaintiff's ability to present an adequate

2  defense in the his SVP proceedings (id.).

4      Defendants allegedly housed Plaintiff with penal inmates "with the

5  expectation of having [Plaintiff] attacked and possibly killed" by

6  convicted murderer inmate Turner (id.).   Inmate Turner allegedly

7  threatened Plaintiff in December of 2006, saying he, Turner, was going

8  to make Plaintiff "'victim #12'" (id.).

10     Defendants also denied Plaintiff the ability to speak to a

11  supervisor (id.).   Plaintiff allegedly received no response to

12  Plaintiff's "numerous" grievances (id.).   Defendants allegedly

13  discriminated against Plaintiff on account of Plaintiff's race and

14  status as a sexually violent predator detainee (id.).

16     Plaintiff further alleges that, on July 5, 2005, several "John

17  Doe" deputies and an unidentified supervisor subjected Plaintiff to

18  excessive force by "forcefully" handcuffing Plaintiff after Plaintiff

19  requested to speak with a supervisor concerning his "No Red Meat" diet

20  (id., p. 10).   According to Plaintiff, a 280-pound deputy dropped his

21  weight on Plaintiff's back, and other deputies placed Plaintiff's hands

22  high above his shoulder blades, assertedly causing Plaintiff serious

23  injury (id.).   Plaintiff alleges he was slammed against a door jamb,

24  causing Plaintiff's lip to split (id.).   Plaintiff allegedly was

25  removed with his arms forced up and then slammed against a staging door

26  (id.).   The deputies allegedly slammed Plaintiff's face into a metal

27  screen, breaking Plaintiff's eyeglasses and injuring his face and neck

28  (id.).   The deputies then handcuffed Plaintiff so tightly as to cut off

Plaintiff's circulation and bruise his wrists (id.).  Plaintiff
allegedly was left in this condition in the yard without medical
attention for over five hours (id.).  An unidentified senior deputy
allegedly observed this incident but reportedly did nothing to protect
Plaintiff (id.).  Plaintiff alleges that, the next morning, nurse Kim
denied Plaintiff medical care because the nurse assertedly was afraid
of the deputies (id.).  Plaintiff allegedly did not receive medical
attention for two weeks (id.).

**Claim Five**

Plaintiff alleges that "Custody Assistant D.A. Cruz," deputy
Bisaha, and other deputies assigned to the Legal Unit denied Plaintiff
law library access despite court orders for library access and legal
supplies (Complaint, p. 11).  These denials allegedly caused
"irreparable harm" to seven state and federal lawsuits in which
Plaintiff was involved, including his SVP proceedings (id.).  Other
unidentified "John Doe" deputies also reportedly denied Plaintiff
access to the module law library, causing harm to Plaintiff's cases
(id.).  Plaintiff further alleges that, in retaliation for Plaintiff's
grievances, unidentified deputies left Plaintiff in an unsanitary,
smelly library bathroom for 12 hours, and left Plaintiff in a shower
that smelled of urine (id.).

**Claim Six**

Plaintiff alleges that deputy Benahizee and a psychiatrist, Dr.
King, exhibited deliberate indifference and retaliated against

1  Plaintiff for filing grievances by causing to be filed a fraudulent
2  "psych report" alleging Plaintiff was "homicidal/suicidal" (Complaint,
3  p. 12).   Deputies allegedly confined Plaintiff in a wheelchair in
4  excessively tight waistchains and took him to the office of Dr. Green,
5  who assertedly said he, Dr. Green, would send Plaintiff to the
6  forensics floor with eye medication and medical orders for a "No Red
7  Meat Diet," but that Dr. Green would not clear Plaintiff from being
8  labeled "homicidal/suicidal" (id.).   Plaintiff allegedly was almost
9  placed in a "5-Points Restraint Bed" (id.).
10
11  **Claim Seven**
12
13      Plaintiff alleges that deputies Bisaha and Smeltzer denied
14  Plaintiff his right of privacy when these deputies entered Plaintiff's
15  cell and examined and videotaped Plaintiff's legal documents
16  (Complaint, pp. 12-13).   These actions allegedly caused irreparable
17  injury to Plaintiff's other lawsuits (id., p. 13).
18
19  **Claim Eight**
20
21      Plaintiff alleges that unidentified deputies retaliated against
22  Plaintiff for filing complaints and contacting the ACLU concerning
23  inadequacies in the law library, assertedly by leaving Plaintiff in a
24  law library lacking toilet facilities for six to twelve hours, which
25  allegedly caused pain to Plaintiff's liver and kidneys (Complaint, pp.
26  13-14).   These actions allegedly hindered Plaintiff in the prosecution
27  of his various lawsuits (id.).
28  ///

1    Plaintiff also alleges the library had no toilet or running water
2    in the library, bad lighting, defective telephones and computer and no
3    "ADA computer screens" (id.).  Plaintiff alleges that sheriff's
4    employee Smilor said he, Smilor, would put his urine in Plaintiff's
5    doctor-prescribed special diet (id.).  Plaintiff allegedly attempted to
6    notify Sheriff Baca and other supervisors concerning the alleged denial
7    of Plaintiff's privileges and rights due to a lack of training (id.).

8

9    **Claim Nine**

10

11    Plaintiff alleges that, on September 5, 2007, Nurse Cruz told
12    Plaintiff that Plaintiff had an "ACLU medical court order" for a "No
13    Spice" diet, "which was denied to [Plaintiff]" (Complaint, p. 14).
14    Plaintiff allegedly was told to see a doctor, but Nurse Basilis refused
15    to allow Plaintiff to see a doctor (id., pp. 14-15).  When Plaintiff
16    protested that he allegedly had a court order to see a doctor, Deputy
17    Briseno allegedly grabbed Plaintiff and slammed Plaintiff's face into a
18    wall (id., p. 15).  Deputies then allegedly took Plaintiff to his
19    housing module and slammed Plaintiff face first into the wall beside
20    his cell (id.).  Sergeant Christiansen allegedly stood by, failed to
21    intervene to protect Plaintiff, and then ordered Plaintiff locked in
22    his cell without any medical attention (id.).  A "pill call" nurse
23    allegedly refused Plaintiff's request for medical treatment for severe
24    pain, and refused to document Plaintiff's injuries (id.).

25

26    The next morning, deputy Cobb and a "Jane Doe" nurse allegedly
27    came to Plaintiff's cell to administer medication before Plaintiff went
28    to court (id.).  Plaintiff, who allegedly could barely get out of bed,

1 assertedly stated he had severe pain in his neck, back and face and
2 wanted to see a doctor (id., pp. 15-16).   The nurse allegedly denied
3 Plaintiff's request to see a doctor (id., p. 16).   Later, Plaintiff
4 allegedly told deputies Owens and Pimentel that Plaintiff was in severe
5 pain and asked to see a doctor (id.).   Plaintiff allegedly was taken to
6 the clinic, where nurses assertedly denied Plaintiff access to a doctor
7 (id.).   Owens allegedly fastened waistchains on Plaintiff which were so
8 tight that they caused bruises and broke the skin on Plaintiff's wrist
9 (id.).   The deputies and nurses allegedly refused Plaintiff's requests
10 to see a doctor (id.).   The deputies allegedly pulled Plaintiff to the
11 floor and placed their knees on Plaintiff's spine, assertedly causing
12 severe pain to Plaintiff's spine, back and neck (id., p. 17).   Deputy
13 Pimentel allegedly stuck his fingers into Plaintiff's eyes and sprayed
14 "O.C. Mace" into Plaintiff's eyes and mouth (id.).   Medical employees
15 Adu, Farole and other staff nurses allegedly observed the attack and
16 Plaintiff's injuries, but left the scene and failed to document the
17 incident or Plaintiff's injuries (id.).

18

19     The deputies allegedly left Plaintiff in a holding tank for thirty
20 minutes without any means of washing his eyes (id.).   According to
21 Plaintiff, a nurse appeared and allegedly sprayed water in Plaintiff's
22 eyes, which allegedly did not relieve the pain because Plaintiff has
23 glaucoma, macular hole degeneration and other eye diseases (id.).   This
24 incident allegedly has caused Plaintiff to suffer blurred vision,
25 severe headaches and dizziness (id.).   Plaintiff further alleges that,
26 on September 5 and 6, 2007, sheriff's doctors Wilbur Williams, Raleigh
27 Saddler, Jr. and "Dr. Doe" denied Plaintiff medical care for his eyes,
28 ///

face, head, neck, spine and back (id., p. 18).  Dr. Williams allegedly made a fraudulent examination report (id.).

Sergeant Patterson allegedly made a video, and Plaintiff allegedly was locked down in his cell for four days without any reason (id.).  On September 30, 2007, Sergeant Christiansen and other deputies allegedly videotaped Plaintiff's statement concerning the alleged assault (id.).  Sergeant Christiansen allegedly falsely denied being involved in the assault (id.).  Sergeant Christiansen allegedly took Plaintiff to the medical clinic, videotaping Plaintiff during the trip, and told the nurse to tell the doctor that Plaintiff had a "small acute arthritis" in his neck (id.).  A "Dr. Doe" allegedly refused to examine Plaintiff, gave Plaintiff a pain pill, and said he would have Plaintiff's lower back x-rayed (id., p. 19).  Without examining Plaintiff, the doctor said Plaintiff had a "small acute arthritis" of the neck (id.).  Plaintiff alleges the failure of any doctor to examine Plaintiff constituted retaliation against Plaintiff for filing "over 2,875 Inmate Complaint Forms against Sheriff's employees" (id.) (original emphasis).

### Claim Ten

Plaintiff alleges that, on September 22 and September 30, 2007, Lieutenants Slago and Lopez confined Plaintiff in administrative segregation, assertedly without affording Plaintiff his right to call staff and inmate witnesses in his defense (Complaint, p. 19).  Sergeants Figueroa, Wenger and Estrada allegedly failed to train their subordinates, assertedly causing Plaintiff to be placed unlawfully in

administrative segregation with penal inmates, which allegedly put
Plaintiff's life in danger (id.).


**Claim Eleven**


Plaintiff alleges that, from August 28, 2007 to the present, Head
Supervising Cook Lily Sedaña, deputy Felicia Price, and unnamed medical
supervisors and staff have retaliated against Plaintiff for filing
grievances by denying Plaintiff his allegedly doctor- and court-ordered
"No Spice Diet" (Complaint, p. 20).


**Claim Twelve**


Plaintiff alleges that, on February 25, 2008, two unidentified
transportation deputies committed negligence by failing to report to
Coalinga State Hospital medical department supervisors that the engine
on the Twin Towers facility bus was spilling fuel on the freeway
(Complaint, p. 21).  Plaintiff, allegedly a bus passenger, was exposed
to assertedly toxic fumes which allegedly caused pain and injury to
Plaintiff's respiratory and cardio pulmonary functions (id.).
Plaintiff also allegedly had to obtain an injection to prevent
Plaintiff from throwing up (id.).

///
///
///
///
///
///

**DISCUSSION**

I.   **Unclear Identification of Defendants**

As mentioned above, Plaintiff identifies certain Defendants in the caption and introductory paragraphs of the Complaint, but also appears to assert claims against many other individuals, some identified by name in the various claims for relief and some identified by fictitious names.  It is unclear which of these other persons Plaintiff intends to sue.  It also is unclear which Defendants are being sued on which claim for relief.  A complaint is subject to dismissal if one cannot determine from the pleading who is being sued.  McHenry v. Renne, 84 F.3d 1172, 1178 (9th Cir. 1996).[3]


II.   **Official Capacity Claims**

The official capacity claims against the individual Defendants must be construed as claims against the County.  See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).  Plaintiffs may not sue the County or any municipal entity on a theory of respondeat superior, which is not a theory of liability cognizable under 42 U.S.C. section 1983.

---

[3]   Plaintiff sues a number of fictitious defendants.  A plaintiff may name a fictitious defendant in his or her complaint if the plaintiff does not know the true identity of the defendant prior to the filing of the complaint.  Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999).  However, before the Court can order service of process by the United States Marshal upon any fictitious Defendant, Plaintiff must provide identifying information sufficient to permit the United States Marshal to effect service of process upon the Defendant, including the Defendant's the full name and address.

13

1 | Polk County v. Dodson, 454 U.S. 312, 325 (1981); Gibson v. County of
2 | Washoe, Nev., 290 F.3d 1175, 1185 (9th Cir. 2002), cert. denied, 537
3 | U.S. 1106 (2003).  A municipal entity may be held liable only if the
4 | alleged wrongdoing was committed pursuant to a municipal policy, custom
5 | or usage.  See Board of County Commissioners of Bryan County, Oklahoma
6 | v. Brown, 520 U.S. 397, 402-04 (1997); Monell v. New York City
7 | Department of Social Services, 436 U.S. 658, 691 (1978); see also
8 | Gibson v. County of Washoe, Nev., 290 F.3d at 1185-87 (describing "two
9 | routes" to municipal liability, where municipality's official policy,
10 | regulation or decision violated plaintiff's rights, or alternatively
11 | where municipality failed to act under circumstances showing its
12 | deliberate indifference to plaintiff's rights).  The pleading
13 | requirements for a municipal liability claim are not onerous.  See
14 | Galbraith v. County of Santa Clara, 307 F.3d 1119, 1127 (9th Cir. 2002)
15 | (plaintiff need only allege that a defendant's conduct conformed to
16 | official policy, custom or practice).  However, Plaintiff does not
17 | clearly plead the County's liability under these standards.

19 | Additionally, Plaintiff may not recover punitive damages against a
20 | governmental entity or an individual governmental officer in his or her
21 | official capacity.  See City of Newport v. Fact Concerts, Inc., 453
22 | U.S. 247, 271 (1981); Ruvalcaba v. City of Los Angeles, 167 F.3d 514,
23 | 524 (9th Cir.), cert. denied, 528 U.S. 1003 (1999).

## III.  Personal Involvement of Individual Defendants

27 | An individual defendant is not liable on a civil rights claim
28 | unless the facts establish the defendant's personal involvement in the

14

constitutional deprivation or a causal connection between the
defendant's wrongful conduct and the alleged constitutional
deprivation. See Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989);
Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978). Plaintiff may
not sue any supervisor on a theory that the supervisor is liable for
the acts of his or her subordinates. See Polk County v. Dodson, 454
U.S. at 325. A supervisor may be held liable in his or her individual
capacity "for [his or her] own culpable action or inaction in the
training, supervision or control of [his or her] subordinates."
Watkins v. City of Oakland, Cal., 145 F.3d 1087, 1093 (9th Cir. 1998)
(quoting Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir.
1991)). To state a claim against any individual defendant, the
plaintiff must allege facts showing that the individual defendant
participated in or directed the alleged violation, or knew of the
violation and failed to act to prevent it. See Barren v. Harrington,
152 F.3d 1193, 1194 (9th Cir. 1998), cert. denied, 525 U.S. 1154 (1999)
("A plaintiff must allege facts, not simply conclusions, that show that
an individual was personally involved in the deprivation of his civil
rights."); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Plaintiff fails to allege the personal involvement of several of
the Defendants or putative Defendants. For example, Plaintiff names
Sheriff Baca, Supervisor Molina, the chief physicians of the jail, Dr.
Minckler, and sheriff's captains Adams and Becerra, but generally fails
to allege facts showing these persons' personal involvement in any
alleged civil rights violation. The Complaint is insufficient as to
those Defendants or putative Defendants as to whom Plaintiff fails to
plead personal involvement in any alleged constitutional violation.

## IV.  Claims Implicating Validity of SVP Determination

As indicated above, the form Complaint indicates that Plaintiff is confined at the Coalinga State Hospital.  Claim Twelve also suggests Plaintiff is confined at the Coalinga State Hospital, a facility under the jurisdiction of the California Department of Mental Health which houses those determined to be sexually violent predators.  See Cal. Welf. & Inst. Code §§ 4100(b), 7200.

The SVP Act establishes procedures whereby a person previously convicted of a "sexually violent" offense against two or more victims and who suffers from a "diagnosed mental disorder that makes the person a danger to the health and safety of others" may be civilly committed for a determinate period.  See Hydrick v. Hunter, 500 F.3d 978, 983 (9th Cir. 2007), pet. for cert. filed, 76 U.S.L.W. 3410 (Jan. 17, 2008).  Following the filing of a petition for a determination that an individual is a sexually violent predator, the Superior Court must hold a hearing to determine whether there is probable cause to believe that the person is likely to engage in sexually violent predatory criminal behavior upon release from prison.  See Cal. Welf. & Inst. Code § 6602(a); Hubbart v. Superior Court, 19 Cal. 4th 1138, 1146-47, 81 Cal. Rptr. 2d 492, 969 P.2d 584 (1999)  If the court finds probable cause, the alleged predator must be detained in a "secure facility" pending a jury trial to determine whether he is a sexually violent predator within the meaning of the SVP Act.  See Cal. Welf. & Inst. Code § 6602(a); Hubbart v. Superior Court, 19 Cal. 4th at 1146-47.  After a trial at which the defendant is determined to be a sexually violent predator, the defendant is committed to the custody of the California

Department of Mental Health for an indefinite term. <u>See</u> Cal. Welf. & Inst. Code §§ 6604; <u>Hydrick v. Hunter</u>, 500 F.3d at 983; <u>Hubbart v. Superior Court</u>, 19 Cal. 4th at 1147.

Plaintiff's allegations concerning his asserted transportation from the jail to the Coalinga State Hospital, and the indication on the form Complaint that Plaintiff is confined at the Coalinga State Hospital, suggest Plaintiff's present confinement resulted from a determination in the state court proceedings that Plaintiff is a sexually violent predator. In several of his claims, Plaintiff contends that various Defendants' alleged misconduct caused prejudice to Plaintiff in the SVP proceedings (<u>see, e.g.</u>, Complaint, Ground Four, p. 9; Ground Five, p. 11; Ground Seven, p. 13; Ground Eight, pp. 13-14).

In <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994) ("<u>Heck</u>"), the Supreme Court held that, in order to pursue a claim for damages arising of an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a civil rights plaintiff must prove that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." <u>Id.</u> at 486-487. <u>Heck</u> applies where a inmate challenges an SVP determination in a suit for damages. <u>See</u> <u>Huftile v. Miccio-Fonseca</u>, 410 F.3d 1136, 1140-41 (9th Cir. 2005), <u>cert. denied</u>, 547 U.S. 1166 (2005). Therefore, to the extent Plaintiff ///

asserts claims for damages implicating the validity of a finding that Plaintiff is an SVP, <u>Heck</u> bars those claims.

## V.  Alleged Deliberate Indifference to Medical Needs

Plaintiff asserts a number of claims that jail officials were deliberately indifferent to Plaintiff's alleged medical needs.  The Eighth Amendment's prohibition against cruel and unusual punishment does not apply to civil committees.  <u>See</u> <u>Hydrick v. Hunter</u>, 500 F.3d at 994; <u>Pierce v. Multnomah County, Oregon</u>, 76 F.3d 1032, 1042 (9th Cir.), <u>cert. denied</u>, 519 U.S. 1006 (1996) (Eighth Amendment's proscription against cruel and unusual punishment applies only after conviction). The Due Process Clause of the Fourteenth Amendment provides protection to SVPs that "is at least coextensive with that applicable to prisoners under the Eighth Amendment."  <u>Hydrick v. Hunter</u>, 500 F.3d at 994.  Jail officials can violate the constitution if they are "deliberately indifferent" to an inmate's serious medical needs.  <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994) (Eighth Amendment); <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976) (same); <u>Gibson v. County of Washoe, Nev.</u>, 290 F.3d at 1187 (Due Process standard).

To be liable for "deliberate indifference," a jail official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  <u>Farmer v. Brennan</u>, 511 U.S. at 837.  "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment."  <u>Id.</u> at 838.  Plaintiff's allegations

1  of negligence do not suffice.  See Estelle v. Gamble, 429 U.S. at 105-

2  06 ("Medical malpractice does not become a constitutional violation

3  merely because the victim is a prisoner").

4

5  A 'serious' medical need exists if the failure to treat a

6  prisoner's condition could result in further significant injury or the

7  'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974

8  F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX

9  Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997); see

10  also Lopez v. Smith, 203 F.2d 1122, 1131 (9th Cir. 2000) (examples of

11  "serious medical needs" include "a medical condition that significantly

12  affects an individual's daily activities," and "the existence of

13  chronic and substantial pain"; citation and internal quotations

14  omitted).  Plaintiff's allegation that unidentified persons used a foot

15  to slide Plaintiff's medication under the cell door does not allege any

16  deliberate indifference to a serious medical need of Plaintiff.

17  Plaintiff fails to allege that he did not receive the medication, or

18  that the medication was contaminated in a way to cause serious injury

19  to Plaintiff if ingested.

20

21  VI.  **Alleged Denial of Access to the Courts**

22

23  An inmate claiming a violation of his right of access to the

24  courts must demonstrate that he has standing to bring the claim by

25  showing the defendant's actions caused him to suffer "actual injury" in

26  pursuit of either a direct or collateral attack upon a conviction or

27  sentence or a challenge to the conditions of confinement.  Lewis v.

28  Casey, 518 U.S. 343, 349 (1996); see also Hydrick v. Hunter, 500 F.3d

1  at 990 (civil detainees have constitutional right of access to the

2  courts).  Under Lewis v. Casey, an inmate must show that an action was

3  "lost or rejected," or that presentation of a non-frivolous claim was

4  or is being prevented, as a result of the alleged denial of access.

5  Id. at 356.  Actual injury is not demonstrated by the simple fact that

6  a prisoner is "subject to a governmental institution that was not

7  organized or managed properly."  Id. at 350.  Although Plaintiff

8  alleges that various Defendants or putative Defendants interfered with

9  Plaintiff's ability to prosecute his various lawsuits, Plaintiff does

10 not allege how any asserted particular denial of access to the law

11 library or legal materials rendered Plaintiff unable to present any

12 particular non-frivolous claim, or caused any particular action to be

13 "lost or rejected."

14

15 **VII.   Alleged Failure to Respond to Grievances**

16

17      To the extent Plaintiff alleges Defendants or putative Defendants

18 failed to respond to grievances, the Complaint fails to state a claim

19 for relief.  While inmates may enjoy a First Amendment right to file

20 prison grievances, see Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir.

21 2005),

22 inmates have no "separate constitutional entitlement to a specific

23 prison grievance procedure."  See Ramirez v. Galaza, 334 F.3d 850, 860

24 (9th Cir. 2003), cert. denied, 541 U.S. 1063 (2004) (citation omitted).

25 The failure of prison officials to respond to or process a particular

26 grievance does not violate the Constitution.  See Flick v. Alba, 932

27 F.2d 728, 729 (8th Cir. 1991); Morris v. Newland, 2007 WL 707525, at *7

28 (E.D. Cal. March 6, 2007), adopted, 2007 WL 987846 (E.D. Cal. March 30,

2007) ("a failure to process a grievance does not state a
constitutional violation") (citation omitted); <u>Alonzo v. Squyres</u>, 2002
WL 1880736, at *1 (N.D. Cal. Aug. 9, 2002) ("Although there certainly
is a right to petition the government for redress of grievances (a
First Amendment right), there is no right to a response or any
particular action.") (citations omitted); <u>see also</u> <u>Baltoski v.
Pretorius</u>, 291 F. Supp. 2d 807, 811 (N.D. Ind. 2003)( "[t]he right to
petition the government for redress of grievances, however, does not
guarantee a favorable response, or indeed any response, from state
officials").

## VIII.   **Alleged Retaliation**

     Jail officials may not retaliate against detainees who exercise
their First Amendment rights. <u>Hydrick v. Hunter</u>, 500 F.3d at 990-91;
<u>see also</u> <u>Pratt v. Rowland</u>, 65 F.3d 802, 806 (9th Cir. 1995); <u>Bradley v.
Hall</u>, 64 F.3d 1276, 1281 (9th Cir. 1995).  To allege retaliation,
Plaintiff "must allege that he was retaliated against for exercising
his constitutional rights and that the retaliatory action does not
advance legitimate penological goals, such as preserving institutional
order and discipline." <u>Bruce v. Ylst</u>, 351 F.3d 1283, 1288 (9th Cir.
2003) (citations and internal quotations omitted).  Although Plaintiff
sprinkles allegations of retaliation throughout the Complaint, in a
number of instances Plaintiff fails to link the alleged retaliation to
any particular act or omission of a particular Defendant or putative
Defendant.  Such confused and conclusory allegations of retaliation are
insufficient.  See <u>Wise v. Washington State Dep't of Corrections</u>, 244
Fed. App'x 106, 108 (9th Cir. June 14, 2007), <u>cert. denied</u>, 2008 WL

21

754370 (U.S. Mar. 24, 2008) (prisoner's conclusory allegations of retaliation, "without supporting facts connecting the defendants to his litigation activities," insufficient).

## IX.   Alleged Race Discrimination

Inmates are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race. Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  To allege an equal protection violation, Plaintiff must allege he was intentionally treated differently from others similarly situated and that there was no rational basis for the difference in treatment.  See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Barren v. Harrington, 152 F.3d at 1194-95.  The Complaint contains no such allegations. Therefore, Plaintiff has failed to plead a cognizable race discrimination claim.  See Hamilton v. Adamik, 2007 WL 2782840, at *4 (N.D. Cal. Sept. 24, 2007) (prisoner's conclusory and ambiguous allegations of race discrimination insufficient).

## X.   Plaintiff's Address of Record

As previously indicated, the Complaint lists two different addresses of record for Plaintiff: one at the Coalinga State Hospital and one at the Twin Towers County Jail.  Subsequently-filed documents bear the Coalinga State Hospital address.  However, on April 23, 2008, a minute order sent to Plaintiff at that address was returned undelivered.

///

Plaintiff is advised that Rule 41-6 of the Local Rules of Practice of the United States District Court for the Central District of California requires a party proceeding pro se to keep the Court and the opposing parties apprised of such party's current address and telephone number, if any.  The Court may dismiss an action for failure to maintain a current address of record.  See Carey v. King, 856 F.2d 1439, 1441 (9th Cir. 1988).  Any First Amended Complaint should state Plaintiff's current address of record.

## CONCLUSION AND ORDER

For all of the foregoing reasons, the Complaint is dismissed with leave to amend.  See Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc); 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).  If Plaintiff still wishes to pursue this action, he is granted thirty (30) days from the date of this Memorandum and Order within which to file a First Amended Complaint.  The First Amended Complaint shall be complete in itself.  It shall not refer in any manner to any prior complaint.  Any First Amended Complaint must identify clearly the Defendants being sued on each claim for relief, and must allege clearly what how each Defendant assertedly violated Plaintiff's rights.  Plaintiff may not add Defendants without leave of court.  See Fed. R. Civ. P. 21.

///
///
///
///
///

///

Failure to file timely a First Amended Complaint may result in the dismissal of this action.

DATED: _May 1_____, 2008.



_Florence-Marie Cooper_
FLORENCE-MARIE COOPER
UNITED STATES DISTRICT JUDGE


Presented this *29th* day of April, 2008 by:


CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE